The next matter, number 221938, President and Fellows of Harvard College v. Zurich American Insurance Company. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. Marshall Galinsky for the appellant. May it please the Court, if I could please reserve two minutes for rebuttal. Yes, you may. Thank you. The ruling below, Your Honors, presents an important question for this Court. Can an insurance company have actual, timely knowledge of a claim, factor that claim into the policyholder's premiums going forward, coordinate in the defense of the claim, yet refuse to cover the claim on the grounds that there was some problem in the notice that was provided to the insurance company? Well, can I get a few basic facts straight in my mind? You say that there was some problem with the giving of notice. There was no actual notice. I thought that was an established fact in this case, that the notice provision of the contract was not complied with. The notice provision in the contract, Your Honor, was complied with. It's just that the reporting component of that provision wasn't technically complied. But there was late notice. The reporting from the policyholders to the insurance company was late. Wait a second. I'm trying to establish a few facts here. All right? The reporting was late. I understand your argument that you say that actual notice is a substitute for notice under the policy. But before I get to that, this is a case that you chose to bring in the federal court. Is that correct, Mr. Lawrence? That's correct, Your Honor. It's a diversity case, and therefore we apply Massachusetts law. That's correct. So we're bound by the precedents of the Supreme Judicial Court of Massachusetts. Correct. And the Supreme Judicial Court of Massachusetts has held squarely, both in Charles T. Maine and subsequently in Tolensky, that notice provisions in a claims-made policy must be strictly complied with and that lack of prejudice is not a defense to the failure to comply with a notice provision. Is that the holding of Charles T. Maine? I have a slightly different gloss on the holding of Charles T. Maine. I would agree with Your Honor's description that prejudice is not an appropriate consideration under Charles T. Maine. That's correct. Excuse me. And we're bound to apply that rule. And, indeed, this court four times already has said that that is Massachusetts law since Charles T. Maine. We've said that in the Deluglio case. We've said it in the J.K. case. We've said it in Judge Hansen's decision. Yes, the Talcott case. And in the fourth case that is escaping me. But four times we've said that aren't we bound by those precedents? We can't change the SJC's law, and the law of the circuit says we can't change our interpretation of the SJC's law. I'd agree with that. And I think the key then is to understand the important and fundamental distinction that we have in this case compared to Charles T. Maine, Tanofsky, Grigano, Talcott, all of those. And to answer Your Honor's questions, and it's a very important point head on, I think it's critical to go to Charles T. Maine and to this court's interpretation of it as well. What the SJC said in Charles T. Maine is that if a claim is made against an insured, but the insurer does not know about it until a year later, the primary purpose of insuring claims rather than occurrences is frustrated. Yes. The Maine court was explaining why notice is so important in the claims made context, but it never suggested that you then have to analyze every individual case to see if there is or is not actual notice. It was explaining what the root purpose was for having a notice requirement in the policy and for strictly enforcing it. That's correct. In Charles T. Maine, the court said that the insurance company does not have the obligation to come forward with proof that it was prejudiced. That is the rule in the occurrence-based policies. That's true. But it did not rule, and no court has ever ruled, that where an insurance company does have actual timely knowledge of a claim, that its obligations under the insurance contract are excused. Well, that's just a subset of the universe of circumstances in which there could be a lack of prejudice, is you've got a policy that says, you, the insured, shall give us written notice of a claim made. And the insured, for whatever, it's an easy condition to imply war. These are commercial policies. The insured then doesn't comply with that. And when you say, well, the insurer knew because it read something in a newspaper or somebody mentioned it to her in a meeting, that seems to me to be a way of saying they weren't harmed by the lack of written notice, i.e., there was no prejudice. But Massachusetts law tells us lack of prejudice is not a reason for avoiding compliance with an insurance policy. Massachusetts law only says that in the context where the insurance company did not know about the claim. And this is a different situation. Now, it's not a common scenario. Excuse me. The SJC has never limited the no prejudice statement to the context that you suggest. It has said it consistently. And the Massachusetts Appeals Court have said it. And we've said it construing Massachusetts law. But it's never been extended to a fact situation like the one we have here. Well, suppose the claim had been made a day late. Okay? Your client sent in a written notice and it was a day late. You could stand before us and say, the Massachusetts courts have never held a case where you got it just a day late that there's no coverage. And that would be true. But we would say the general rule that lack of prejudice isn't a reason for ignoring compliance with the policy would still apply. So I'm just questioning whether looking at a case that has a general rule and then saying that while this circumstance is factually different, so the general rule doesn't apply, that's a bit of a reach when we're looking at state law and you've chosen to bring it in the federal court where our job isn't to create new state law. Well, I respectfully submit that this court would not be making new law because there's a parallel set of rules that apply. The occurrence rules? No, no, please. There is longstanding precedent in the Supreme Judicial Court dating back to 1980 that says repeatedly that where there has not been compliance with a condition in a contract that the court will not impose a forfeiture unless the purpose of that condition has been frustrated. And that's entirely consistent with what the court said in Charleston. The claim was decided and the SJC determined in effect that that body of law didn't affect claims made policies. What the SJC said in Charleston, Maine, was it followed that rule and it said in Charleston, Maine, that where an insurer does not know about a claim, the primary purpose of that condition is frustrated. They applied that rule. The SJC said exactly the same thing in Kanofsky. So turn to the requirement in the policy that your client gives a written notice. Okay. What's the purpose of that requirement that it gives written notice? The SJC has held in Charleston, Maine, and again in Kanofsky, and this court has acknowledged it, that the purpose of a claims made notice provision is fairness in rate setting. Well, they didn't even address, if you were going to distinguish Charleston, Maine, it didn't focus on the writing requirement. Here this policy, as I understand it, requires written notice and your client did not, even under your scenario, give written notice. That's, I correct the fact, your Honor's understanding of the facts. The policy in this case had multiple requirements within a notice reporting provision. There was a requirement for written notice and that requirement was met here. The requirement for written notice. Written notice was given timely? Yes. The requirement for written notice. Excuse me, that's your ambiguity argument, isn't it? Where you're now claiming that the notice provision is ambiguous and notice, isn't that in effect what this argument is? Well, no, I don't think you need to go there to answer Judge Kayotta's question. Oh, okay. Although we do say that in our briefs and I believe that's the case. You're puzzling me because if your client gave written notice timely, what are we even arguing about here? Because the policy provision, it's a notice and reporting provision, it's broken up into multiple paragraphs. The first two paragraphs say that written notice, and that's the language used in the policy, written notice must be given as soon as practicable, but it need not, that written notice, again, that's what the policy says, but written notice need not be provided until the claim rises to more than 50% of the retention underlying the policy. Here, the primary policy attached at $2.5 million, written notice was given to them right away. The excess policy sold by Zurich, that's at issue here, that's at $27.5 million above. And written notice was given to the insurance company, to Zurich, the excess company, in May of 2017. At that point in time, the loss was over $10 million away from the attachment point of Zurich. So it's clear that the written notice, as it was required, was provided far in advance of the deadline. Now, the policy goes on and has another requirement. It says in no event shall, in any event, the case shall be reported to the insurance company. It doesn't use the phrase written notice again. It says the claim shall be reported to the insurance company within 90 days of the end of the policy period. So you want us to read the reported as allowing for oral reports? Yes. Clearly it is, because when the insurance company wants to describe what's required in terms of written notice, it uses those words, written notice. It also specifies that written notice has to be given by the policyholder. The reported provision doesn't have either of those requirements. Did you argue in the district court that the notice and reporting provisions were two separate provisions? No, we didn't, Your Honor. No. So that argument is by the boards, isn't it, under the razor waiver rule? No, it's not, Your Honor. This court can make an exception to the waiver rule. Yes, but we've done that once in a blue moon, and usually when the public interest is at stake. The only case you cite is Harwood. Well, that exception can be made in situations like this one, where the court – Do you cite any case other than Harwood for that proposition? No, Your Honor. No, and Harwood is a case where we were talking about a legislative privilege where a state had filed an amicus brief asking us to consider the issue where we said the public interest was at stake and where the argument was completely persuasive. None of those things are true of your ambiguity argument in this case, as far as I can tell. The court laid out five factors, as Your Honor is very well aware, to be considered in that situation. And here, Zurich concedes that two of the factors do work in our favor. The parties are in agreement that two of the factors are not on point at all, the ones that Your Honor is referring to. And then there's two other factors that are considered, whether this case, the omission was inadvertent or whether it was a result of an attempt to gain tactical advantage. And there's no evidence to support that, Your Honor. Here it was plainly inadvertent, and the argument is highly persuasive. So circle back. If we find, unless we were to find this is one of those rare cases where we're going to avoid, ignore waiver, then isn't it clear you did not give the required timely notice under the policy as specified by the policy?  I would agree that the reporting from the policyholder to the insurance company didn't meet the technical requirements. But that leads us back, of course, to the key fundamental issue, which is we'd be making new law here. There is no Massachusetts law that stands for the proposition that where an insurance company has actual timely notice of the claim, that it can be, and had the opportunity to set premiums, and in fact did set premiums based on that knowledge, that the purpose of that condition, fairness in rate setting, is met, and the insurance company should be excused from its obligations. Thank you. I'll look forward to talking to you again in a few minutes. Thank you, Counsel. At this time, if Counsel for the Appellee can introduce himself on the record to begin. Thank you. Good morning, Your Honors. Andrew Margulies for Appellee's Zurich American Insurance Company. May it please the Court. We disagree with the statement that Counsel made regarding in no situation has the Massachusetts course addressed a situation where an insurance company had knowledge, but still allowed them to deny coverage on failure to comply with the notice provision. That is not correct. In the Foneros v. Law Offices of Alan Doan case, there was a malpractice case against the insured attorney, and both the plaintiff's attorney and the insurance broker contacted the insurance company and said, we have this lawsuit, and the insured refused to report it, saying, no, I don't want that. Five years later, the insured finally reported it to the insurance company, and the court said, failed to comply with the notice provision. And what the court said, and this is a Superior Court case, Foneros, citing a Seventh Circuit case, said, mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage, coupled with knowledge that the insurer's assistance is desired, an insurance company is not required to intermeddle officiously where its services have not been requested. The policy has a clear, plain, written reporting requirement, as every claims-made policy has. And it says, as a condition precedent to the obligations of the insurers under this policy, written notice must be given. In all events, no later than 90 days after the policy. Harvard admits it did not give notice until a year and a half later. It did not comply with a clear condition precedent to coverage, and the discussion about the purpose of the notice provision, as Your Honor pointed out, that was a historical discussion as to why these types of notice provisions are in claims-made policies. Once it's in the policy, the law is clear that it must be strictly complied with. There is no wiggle room, as the district court held. It must be strictly complied with, and it was not here. So we believe that the fact that mere knowledge is not has been decided by the Massachusetts courts. But even if it hadn't, think of this in a bigger context. This is not one case. This would turn claims-made policies on their head. Every large entity, Fortune 500 companies, educational institutions, have claims-made policies, and they are all involved in lawsuits and claims that are newsworthy, that are in the Wall Street Journal, that are in Bloomberg News, on CNN, and everything else. This would hold that we're not going to enforce these clear notice provisions. We're going to change Massachusetts law and say they don't have to be strictly complied with and go to a case-by-case analysis and say, okay, somebody at the insurance company watched CNN that night and there was a story about a lawsuit, or it was on page 22 of the Wall Street Journal. Well, that's enough. I now don't have to give notice. It would turn this on its head. As this court has held in applying Massachusetts law, notice provisions in claims-made policies must be strictly complied with, period. There is no exception, and that is the law that cannot be changed. And there is nothing here that changes that, and there is nothing here that counsels against that. And our position is clear that they did not comply with the notice provision. Harvard admits that. They're just trying to get a sense that, well, we knew about it somehow, so that's enough. And I also want to comment that counsel made a statement that here, not only did we have knowledge, but we somehow participated in the defense of the case. There's nothing in the record that suggests that at all. There was a mention that we knew about the lawsuit because it was in the news, and certainly insurance companies read newspapers, but Harvard never reported it. We were in no way involved in the defense. There's nothing in the record that suggests that. But even if it was, again, it must be strictly complied with, and here it was not. What about his point that in this case, in this situation, that rate setting relied on this actual notice? There's no evidence in the record about that, and that frankly doesn't matter. The point is that that was a comment in Charles T. Main about why these types of notice provisions exist, that it's for purposes of rate setting. But the court also noted that there's a separate notice requirement, which is the as soon as practicable that allows insurance companies to be involved in the defense. And what the court noted is that claims made policies often have both, so both purposes have to be satisfied. And here our provision has both. It says written notice must be given as soon as practicable, but in no event later than 90 days after the policy period. But no insurance company is going to set rates based on a claim that has never been submitted. Rates are going to be based on many factors, and I'm not going to get into a discussion about rate setting because that's beyond this. No, but so is the statement not true? There's nothing in the record that suggests that at all. So I do not believe it's an accurate statement. If there's no other questions, we will rest on the arguments in our brief. Thank you, Your Honor. At this time, counsel for the appellant has a two-minute rebuttal. Please reintroduce yourself on the record to begin again. Marshall Galinsky for the appellant. The reason, Your Honor, is why there's nothing in the record is because Zurich hasn't permitted Harvard any discovery into what anyone at the company knew. The rule that was obligated by— What about your statement that Zurich has participated in the defense? What's in the record on that? No, there's nothing in the record on that, Your Honor. What do you base the statement on? When I made that statement, I'm referring to the law that would be set if this court adopts the district court's automatic forfeiture rule. It would create a paradigm in Massachusetts where insurance companies could know about a claim, participate in the defense of the claim, charge their policyholder more money because of that claim, yet turn around after the fact and say, you know what, we're not going to pay that claim. Well, that sounds more like an estoppel or a waiver theory that hasn't been put forward in this case. I mean, you could clearly imagine a situation in which notice was required, wasn't given, but then the insured did so much, including making representations that it might deem to have waived its defense. Well, here's a fact pattern that comes up, not unusual. But this hasn't been raised in this case. It wasn't even on the briefs on appeal. The reason why I brought it up is because this will be the consequences if this court adopts the district court's rule. Consider this situation, which does happen. You have a small business that suffers an injury because they hire a contractor that does something wrong in doing repairs or a construction project on the factory floor. The small business goes to the contractor and says, we need you to fix this, and the contractor is unresponsive. They kind of disappear. The small business knows that the contractor has claims made insurance and goes directly to the insurance company and says, we're presenting a claim here, and we need you to respond. You're our only source of recourse for the harm that's been done to my business. It's not unusual in that situation where the insurance company has actual knowledge, not from its policyholder, but from the claimant directly, that the insurance company steps up, does an investigation, finds out what's going on in response to the claim. If this court endorses the rule that was put forward by the district court, that type of situation won't happen anymore. Okay, so that set of facts, the participation, that was hypothetical as opposed to what the record shows in this case. What about as to rate setting? Was that also hypothetical or has that happened in this case? We have documents from Zurich's underwriters. Okay, so is that in the record? Yes, it's in the record in this case. They're not particularly clear because we don't have all the documents. Zurich produced very little of the documents from its underwriters from the key time period. Would you mind submitting a 20HA just to point out where in the record those documents are just so that I can look at them? I don't mean now, I mean after argument because you're actually over time, so I don't mean now. But you wouldn't mind doing that? So there's no discussion in there about if that actually happened in that case, it had something to do with litigation risk or you're just saying that this happened? There is evidence from certain underwriting documents that they were monitoring what was going on, but I caution Your Honor that the evidence is sparse simply because Zurich refused to turn over its documents. I know, but you made the representation. I'm just trying to see. I want to look at the record. Of course, Your Honor. Thank you. Thank you, Counsel. That concludes argument in this case.